IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Spencer Jackson (K72214), | |
| Petitioner, | |
| v. | Case No. 23 C 00076 |
| Anthony Wills, Warden, Menard Correctional Center, | Hon. LaShonda A. Hunt |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner Spencer Jackson, a prisoner incarcerated at the Menard Correctional Center, brings this counseled habeas corpus petition pursuant to 28 U.S.C. § 2254. Petitioner takes issue with various aspects of his trial in the Circuit Court of Cook County, which concluded with a jury finding him guilty of second degree murder, three counts of attempt first degree murder, and four counts of aggravated discharge of a firearm. Respondent moves to dismiss Petitioner's second amended petition as untimely. For the reasons discussed below, the Court grants Respondent's motion to dismiss [22] and declines to issue a certificate of appealability.

## BACKGROUND

The following facts, which are presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1), are drawn from the state court record [24] and the state appellate court opinions [24-1], [24-3]. In the early hours of January 31, 2010, Petitioner saw his ex-girlfriend, Denise Davis, at a Chicago club. *People v. Jackson*, 2017 IL App (1st) 142841-U, ¶ 4. Denise was at the club with her current boyfriend, Anthony Dawson, Anthony's brother Lytony Dawson,[1] Lytony's girlfriend, and James

---

[1] Because Anthony and Lytony Dawson have the same last name, the Court refers to all individuals by their first names for clarity.

1

Jenkins. *Id.* When Denise walked by Petitioner, Petitioner pulled at her hair. *Id.* When Anthony asked Denise why Petitioner pulled her hair, she said she did not know and further told Anthony she did not know Petitioner. *Id.* Anthony approached Petitioner and asked him whether he knew Denise. *Id.* Denise, behind Anthony, shook her head, indicating to Petitioner that he should say that he did not know her. *Id.* Petitioner told Anthony he did not know Denise. *Id.*

Upon leaving the club, Petitioner approached Anthony and Denise, who were now in a car. *Id.* at ¶ 5. Lytony, intoxicated, was in the backseat. *Id.* According to Petitioner, Denise called him over to confirm that he did not know her; Petitioner talked with Anthony and Denise, explaining that he and Denise dated some time ago. *Id.* As the three spoke, James pulled his car close to Petitioner and told Petitioner that he knew the people in the car Anthony was driving and no one wanted any conflict. *Id.* at ¶ 6. As Petitioner spoke with Anthony and Denise, he took out an unlit cigarette. *Id.* Lytony rolled down, and eventually reached out, the rear passenger side window, requesting a cigarette from Petitioner. *Id.* Lytony then reached for the cigarette in Petitioner's mouth. *Id.* After this, Petitioner claimed he saw Lytony reach into his pocket and thought he pulled out a gun. *Id.* Petitioner drew his gun and fatally shot Lytony in the chest. *Id.* As Anthony drove away, Petitioner fired shots at the fleeing vehicle. *Id.* at ¶ 7. The shots caused damage to the vehicle but did not hit any of the occupants. *Id.* Additionally, Petitioner fired several shots at James as he drove away in his car, which likewise caused damage but did not injure James. *Id.*

After the incident, Petitioner fled Illinois and was eventually arrested pursuant to a warrant and brought back to Chicago. *Id.* at ¶ 8. Petitioner initially told police that he was not present for the shooting and later claimed to have lied about not being there so as not to risk his words being twisted. *Id.* The State eventually proceeded with two counts of first degree murder, three counts of

2

attempt first degree murder, and four counts of aggravated discharge of a firearm. *People v. Jackson*, 2021 IL App (1st) 190406-U, ¶ 3.

After pleading not guilty to all charges, Petitioner proceeded to a trial by jury. Anthony, Denise, and James all testified at the trial. Of note, Anthony testified that neither he nor Lytony had a gun, and that Petitioner had his arm in his shirt when he approached their vehicle. *Id.* at ¶ 6. Anthony also denied that Lytony tried to pull out a lighter as Petitioner denied him a cigarette. *Id.* at ¶ 7. Further, Anthony denied that Lytony was acting aggressively and said he did not recall Petitioner instructing Lytony not to reach for anything. *Id.* at ¶ 9. Anthony did not know of any contact between Lytony and Petitioner prior to the night of the incident. *Id.*

Contrary to Anthony's testimony, Denise testified that Petitioner told Lytony not to move as Lytony reached into his pocket. *Id.* at ¶ 13. Denise testified that after Lytony repeatedly requested a cigarette from Petitioner, Lytony reached for what she assumed to be a lighter. *Id.* at ¶ 11. She confirmed in her testimony before the grand jury that after Lytony died, she saw a lighter in his hand. *Id.* at ¶ 12. Additionally, Denise testified that she did not see either Anthony or Lytony with a firearm and she did not see Lytony threaten anyone. *Id.*

Consistent with Anthony and Denise's testimony, James testified that he did not see Anthony or Lytony with a weapon on the night of the shooting. *Id.* at ¶ 16. He further testified that Lytony, although he reached out the window, was not reaching for anything and that Petitioner did not hesitate in firing at Lytony. *Id.* at ¶ 17.

The evidence at trial demonstrated that after the incident, no firearms were recovered from either vehicle or the scene of the shooting. *Id.* at ¶ 19. Petitioner took the stand and testified that Lytony was acting belligerent and that he interpreted Lytony reaching out the window and trying to take a cigarette as an aggressive move. *Id.* at ¶ 26. According to Petitioner, Lytony reached for

3

a firearm that was on his lap or in his pocket, Petitioner repeatedly told him to stop, and Petitioner had no question that it was a firearm. *Id.* Petitioner claimed that he knew the people in Lytony's car were armed and thought that James' truck may be armed, too. *Id.* at ¶ 27. According to Petitioner, he was not intending to shoot at the vehicles as they fled, nor was he intending to shoot anyone, but was instead firing warning shots to protect himself. *Id.* Despite Petitioner's own testimony that Lytony was not making him nervous and that he was not scared, Petitioner raised an affirmative defense of self-defense. *Jackson*, 2017 IL App (1st) 142841-U, ¶¶ 2, 6.

After being instructed on both self-defense and the lesser included offense of second degree murder, the jury found Petitioner guilty of one count of second degree murder, three counts of attempt first degree murder, and four counts of aggravated discharge of a firearm. *Jackson*, 2021 IL App (1st) 190406-U, ¶ 31. Petitioner was sentenced to a total of 45 years in prison. *Id.* at ¶ 32. He moved to reconsider the sentence, which the circuit court denied. *Id*. Petitioner then appealed and, when the appellate court affirmed, filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, which was denied on March 21, 2018. *Jackson*, 2017 IL App (1st) 142841-U, ¶ 1; *People v. Jackson*, 95 N.E.3d 511 (Ill. Mar. 21, 2018) (Table). Petitioner did not file a writ of certiorari to the United States Supreme Court.

On December 21, 2018, Denise executed an affidavit stating, in pertinent part, that "Lytony Dawson had a gun[,]" she believed that Petitioner "fired his gun in defense of his life based on what [she] witnessed that night," Anthony told Denise that he was disposing of Lytony's gun when he left the hospital with it, she testified that no one had a gun in the car at trial because she was "very scared" of the Dawson family, and that she felt safe coming forward with this information because she no longer associated with anyone from the Dawson family and no longer stays in Chicago. (Aff. of Denise Davis, at ¶¶ 3, 4, 7-9, Dkt. 16-1). Seven days later, Petitioner filed a

4

postconviction petition before the Circuit Court of Cook County alleging that in light of Denise's affidavit, Petitioner was actually innocent as he acted in self-defense. *Jackson*, 2021 IL App (1st) 190406-U, ¶ 34. The circuit court summarily dismissed Petitioner's postconviction petition, which the appellate court affirmed, holding that "defendant failed to state the gist of a constitutional claim of actual innocence, as the allegation that one of the victims possessed a firearm at the time of the offense, by itself, would not have probably led to a different outcome at trial by establishing that defendant acted in self-defense." *Id.* at ¶ 1. The Illinois Supreme Court denied Petitioner's PLA on September 29, 2021. *People v. Jackson*, 175 N.E.3d 145 (Ill. Sept. 29, 2021) (Table).[2]

More than a year later, on January 5, 2023, Petitioner filed a counseled petition for a writ of habeas corpus in this Court [1]. The case was originally assigned to District Judge Tharp who, after conducting a preliminary review of the petition, issued an order [3] requiring Petitioner to show cause as to why the petition should not be dismissed as untimely and allowing Petitioner to submit an amended petition that used or substantially followed the Court's preprinted § 2254 form. Following reassignment of the case to this Court on June 2, 2023 [10], Petitioner filed an amended petition, which was denied without prejudice for again failing to raise a cognizable federal claim [14]. Petitioner subsequently filed the operative second amended habeas corpus petition on September 7, 2023 [17-2], alleging (1) a due process violation based on an erroneous jury instruction on the law of attempt first degree murder; (2) ineffective assistance of counsel in failing to request certain jury instructions; (3) prosecutorial misconduct in closing and rebuttal arguments; (4) a failure by the State to prove Petitioner guilty of attempt murder beyond a reasonable doubt; and (5) a violation of Illinois Supreme Court Rule 431(b) by the trial judge. Notably, Petitioner no longer raises a freestanding actual innocence argument; rather, he argues actual innocence in

---

[2] Petitioner erroneously states that the Illinois Supreme Court denied his postconviction PLA on October 7, 2021. (Pet. Mem. of Law in Supp. at 3, Dkt, 17-3).

5

support of equitably tolling the statute of limitations. Respondent filed the present motion to dismiss the petition as untimely on 12/11/23 [22]. Although Petitioner was ordered to respond to the motion by 1/8/24 [21], to date, he has not done so. Accordingly, the case is ready for review.

### **LEGAL STANDARD**

A petitioner must bring a petition for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The Supreme Court has held that the statute of limitations identified in 28 U.S.C. § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 634 (2010). Such tolling is "rarely granted." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). *See also Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) ("We rarely deem equitable tolling appropriate . . . ."). In seeking equitable tolling, a petitioner bears the burden of demonstrating that (1) he diligently pursued his rights, and (2) some extraordinary circumstance prevented his timely filing. *Pace v. DiGuglielmo*,

544 U.S. 408, 418 (2005). Additionally, "actual innocence, if proved, serves as a gateway through which a petitioner may pass" when the impediment to hearing his case is that the statute of limitations has expired. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). As is the case with equitable tolling, "tenable actual-innocence gateway pleas are rare." *Id.* To meet the actual innocence standard, a petitioner must establish that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

## **DISCUSSION**

Upon careful review of the petition, the unrebutted arguments of Respondent, and the state court record, the Court concludes that the petition is untimely, and neither equitable tolling nor actual innocence can excuse Petitioner's untimely filing. Therefore, this case must be dismissed.

### **I. Statute of Limitations Calculation**

Petitioner asserts that he had one year to bring his petition from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). (Pet. Mem. of Law in Supp. at 18). Respondent, however, argues that § 2244(d)(1)(A), not § 2244(d)(1)(D), applies here. (Resp. Mot. to Dismiss at 11, Dkt. 22). The Court agrees with Respondent that subsection (A), not subsection (D) sets the limitations period. Section 2244(d)(1)(D) is applied on a "claim-by-claim" basis. *Zuno v. Brannon-Dortch*, No. 21 C 4786, 2023 WL 4083907, at *4 (N.D. Ill. June 20, 2023). While Denise's affidavit may provide a factual predicate for a claim of actual innocence, no such claim is raised in the second amended petition as it is non-cognizable on federal habeas review. In sum, because the factual predicates of the claims Petitioner brings in this case do not arise from Denise's affidavit, § 2244(d)(1)(A) governs.

The Court must therefore determine "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" The Supreme Court has held that Section 2244(d)(1)(A) is comprised of two prongs, each of which "relates to a distinct category of petitioners." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The first prong—"the conclusion of direct review"—applies to those petitioners who petition the United States Supreme Court for certiorari. *Id.* The conclusion of direct review for those petitioners is when the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari." *Id.* The second prong—"expiration of the time for seeking such review"—applies to petitioners who did not seek certiorari. *Id.* For the latter group, the statute of limitations begins to run when a petitioner's time for seeking certiorari in the Supreme Court, or direct review in the state court, has expired. *Id.*

Because Petitioner did not file a certiorari petition on direct appeal, he falls under the second prong, meaning his judgment became final when his time for seeking certiorari or direct review in the state court expired. Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, the state's highest court, which was denied on March 21, 2018. *People v. Jackson*, 95 N.E.3d 511 (Ill. Mar. 21, 2018) (Table); (State Ct. R., Ex. B). Supreme Court Rule 13 provides that a timely petition for a writ of certiorari must be filed within 90 days of the entry of judgment entered by a state court of last resort or the entry of an order by a state court of last resort denying discretionary review. Supreme Ct. R. 13. *See also Gonzalez*, 565 U.S. at 152 ("we determine the 'expiration of the time for seeking [direct] review' from [the Supreme Court's] filing deadlines when petitioners forgo certiorari"). Therefore, the statute of limitations began to run on June 20, 2018 (90 days thereafter).

8

But when Petitioner filed his post-conviction petition in state court on December 28, 2018, (State Ct. R., Ex. G, Dkt. 24-7), the clock stopped running. 28 U.S.C. § 2244(d)(2). At that time, 191 days had elapsed against the one-year limitations period between the completion of his direct appeal on June 20, 2018, and the filing of the postconviction petition on December 28, 2018. The statute of limitations remained tolled for the duration of Petitioner's post-conviction proceedings, until the Illinois Supreme Court denied his PLA on September 29, 2021. The clock resumed and ran until the statute of limitations expired 174 days later, on March 22, 2022. Because Petitioner did not file his original counseled habeas corpus petition until January 5, 2023, it is untimely.

Petitioner operated under a misunderstanding of the relevant law governing the statute of limitations calculation when filing this case. His memorandum in support of his second amended habeas corpus petition incorrectly asserts that his postconviction PLA was denied by the Illinois Supreme Court on October 7, 2021, when it was actually denied on September 29, 2021. (Pet. Mem. of Law in Supp. at 3). Petitioner then explains (incorrectly as it relates to the statute of limitations) that he had 90 days, until January 5, 2022, to file a petition for a writ of certiorari. (*Id*.). He further notes that "one year from that date, January 5, 2023," he filed his original habeas corpus petition. (*Id*.). It is clear that Petitioner originally believed his one-year limitations period ran from January 5, 2022, to January 5, 2023, with his original petition filed on the last day of the limitations period.

That calculation is incorrect for two reasons. First, it ignores the time that lapsed against the limitations period between the completion of direct appeal and the filing of the postconviction petition. Second, the Court appreciates that Petitioner (incorrectly) contends that § 2244(d)(1)(D), not § 2244(d)(1)(A), should apply in this case but even if that were the case, and the Court used the date proposed by Petitioner of December 21, 2018, when Denise filed her affidavit, his case is

9

still untimely. The six days between Denise's affidavit and Petitioner's postconviction petition filed on December 28, 2018, would have run against the statute of limitations. As discussed *supra*, the limitations period was tolled during the postconviction proceedings under § 2244(d)(2), and then the statute of limitations immediately began to run again with the denial of the postconviction PLA on September 29, 2021. *See Lawrence v. Florida*, 549 U.S. 327, 329 (2007) (holding that the 90-day period for filing a petition for a writ of certiorari before the United States Supreme Court following the completion of postconviction proceedings does not qualify for tolling under § 2244(d)(2)). That means the one-year limitations period would have expired on September 23, 2022. Relying upon § 2244(d)(1)(D) does not change the result.[3] The petition is clearly untimely.

## II. Equitable Tolling

Petitioner maintains that equitable tolling should excuse his late filing but the Court is not persuaded. In seeking equitable tolling, a petitioner bears the burden of demonstrating that (1) he diligently pursued his rights, and (2) some extraordinary circumstance prevented his timely filing. *Pace*, 544 U.S. at 418. Petitioner can demonstrate neither.

First, the record is devoid of any evidence to suggest that Petitioner diligently pursued his rights. Second, far from extraordinary circumstances, the untimely filing resulted from a misunderstanding of the statute of limitations. Indeed, Petitioner erroneously calculated the starting date of his one-year period as January 5, 2022, and then filed on January 5, 2023, the last day. It is well settled, though, that mistakes of law by an attorney during a collateral proceeding do not qualify for equitable tolling. *See Griffin v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010)

---

[3] Petitioner would have an additional problem under § 2244(d)(1)(D). December 21, 2018 is the date the affidavit was signed. Section 2244(d)(1)(D), however, instructs that the statute of limitations begins on the date the factual predicate *could have been discovered* through due diligence. The Court need not venture into when Petitioner could have discovered Davis's recantation because, as discussed above, the case is untimely even under § 2244(d)(1)(D).

(explaining that the Supreme Court in *Holland v. Florida*, 560 U.S. 631 (2010), "tells us that a simple legal mistake does not excuse an untimely filing. It may be negligent to wait until what is by a lawyer's own calculation the last possible day, because such a calculation could be wrong. But this kind of negligence is not 'extraordinary' by any means. Such a blunder does not extend the time for filing a collateral attack."); *see also Lombardo v. United States*, 860 F.3d 547, 552 (7th Cir. 2017).

Petitioner's counsel also mentions serious medical and personal challenges, including a bicep injury that inhibited his ability to type and a special needs child who experienced a mental health crisis. (Pet. Mem. of Law in Supp. at 19-20). Counsel has the Court's empathy for those circumstances, but they do not qualify as grounds for equitable tolling. Indeed, nothing in the record indicates that counsel's health and family commitments had any impact on the untimeliness of this case; rather, these appear to be issues that arose *after* the filing of the original petition which, as the Court explained, was already untimely. *Griffin*, 614 F.3d at 330 (explaining that allegation of illness was irrelevant when did not impact untimeliness of petition). Moreover, courts have repeatedly held that equitable tolling for attorney incapacity is not permitted. *See, e.g.*, *Modrowski*, 322 F.3d at 966. Therefore, Petitioner has not met his burden of proving that equitable tolling is appropriate.

### III.     Actual Innocence

Petitioner's final argument is that, in essence, if all else fails, this Court should excuse his late filing because he has made a showing of actual innocence. (Pet. Mem. of Law in Supp. at 20-21). The Supreme Court has held that "if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. In

11

establishing actual innocence, a petitioner bears the burden of showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. *See also House v. Bell*, 547 U.S. 518, 538 (2006) ("A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.").

"A claim of actual innocence must be both credible and founded on new evidence." *Arnold v. Dittmann*, 901 F.3d 830, 836 (7th Cir. 2018). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The reviewing court will consider both new evidence and the existing evidentiary record. *Wilson v. Cromwell*, 69 F.4th 410, 422 (7th Cir. 2023). In doing so, a court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. "It must be presumed that a reasonable juror would consider fairly all of the evidence presented . . . [and] would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id*. The burden on a petitioner to demonstrate actual innocence as a gateway to federal habeas review of an untimely petition is high. *See, e.g.*, *Arnold*, 901 F.3d at 838 ("[T]he *Schlup* standard is an onerous one for the petitioner to meet: the Supreme Court has indicated that it will be the rare case that can successfully navigate through the innocence gateway."); *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) ("The fundamental miscarriage of justice standard erects an extremely high bar for the habeas petitioner to clear.").

Petitioner argues that he is entitled to have his claim heard through the gateway of actual innocence because he "does not merely maintain his innocence but, rather, has an eyewitness professing his innocence." (Pet. Mem. of Law in Supp. at 20). But Denise's affidavit states only that Lytony had a gun, she believed Petitioner acted in self-defense, and Anthony left the hospital that night indicating he was going to get rid of Lytony's gun. (Aff. of Denise Davis, at ¶¶ 3, 4, 7). Petitioner thus insists that Denise's affidavit makes his claim of self-defense "far more reasonable and believable" and that "[t]his development makes it probable that no juror would convict him, thereby meeting the actual innocence standard." (Pet. Mem. of Law in Supp. at 20).

The Court is not convinced. Despite Denise's sworn statements, a reasonable juror could still vote to convict Petitioner. First, as noted by the state court, her affidavit fails to indicate where Lytony's gun was, if he indeed had one, let alone whether he reached for and/or grabbed it prior to Petitioner pointing and firing his gun at Lytony. Furthermore, the affidavit does not indicate the location of Lytony's alleged gun as Petitioner shot at the vehicles as they drove away. Petitioner claims he acted in self-defense, yet Denise's affidavit fails to provide a single fact to suggest that Petitioner was justified in first shooting Lytony and then shooting at the fleeing vehicles. Moreover, even if Lytony had a gun, Denise's affidavit does not establish that Petitioner saw it or was justified in defending himself against it.

Second, Denise's testimony that Petitioner shot his gun in self-defense is cumulative of what was already before the jury—Petitioner's contention that he acted in self-defense. *See, e.g.*, *Carter v. Ryker*, No. 10 C 3783, 2011 WL 589687, at *6 (N.D. Ill. Feb. 9, 2011) (holding that petitioner failed to establish claim of actual innocence when affidavits offered by petitioner were "merely cumulative of his defense at trial" and "the testimony of several other eyewitness[es] supported [petitioner's] conviction."). That the jury found Petitioner guilty of second degree

13

murder, rather than first degree murder, reasonably suggests that they considered the state court's mitigation instruction and deemed Petitioner's actions defensive but unreasonable.

Third, the testimony of Petitioner and now Denise that Lytony had a gun in the car is contradicted by the other eyewitnesses Anthony and James, who each testified that they did not observe Lytony with a gun. Given this conflict on a significant point, Petitioner cannot meet the stringent actual innocence standard. *See, e.g.*, *Wilson*, 69 F.4th at 424 (finding petitioner failed to meet actual innocence standard when, even with new evidence, the court was "left with a complex factual record pointing in different directions").

Although not a dispositive factor, a court may also consider the timing of newly presented evidence in determining whether a petitioner has met the actual innocence standard. *McQuiggin*, 569 U.S. at 401 ("[U]ntimeliness, although not an unyielding ground for dismissal of a petition, does bear on the credibility of evidence proffered to show actual innocence."). In this case, the shootings occurred on January 31, 2010. Denise executed her affidavit on December 21, 2018, almost nine years after the shootings took place. And while she now states that she did not feel safe coming forward until after she no longer associated with the Dawson family and had moved out of the Chicago area, she offers no details as to when those events occurred. As a result, the Court considers this unexplained gap in time in finding Petitioner has failed to meet the actual innocence standard. *McQuiggin*, 569 U.S. at 399 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

Finally, the Court notes that Petitioner's newly offered evidence is a witness's recantation of her trial testimony, and "[d]isbelief of recantations is sensible[.]" *Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000) (stating that "[s]ome witnesses fall prey to influences"). *See also Arnold*, 901 F.3d at 839 (stating that "there are reasons to treat recantations generally with a healthy

14

dose of skepticism" and finding it "entirely possible" the recantation was "the product of guilt and/or pressure from family members rather than a belated confession of what is true."). Denise previously dated Petitioner. (Resp. Mot. to Dismiss at 18). And while that fact alone may not cause a jury to completely discredit Davis's recantation testimony, the remaining evidence in the case discussed *supra* renders the actual innocence standard insurmountable for Petitioner. Therefore, this Court cannot entertain the merits of Petitioner's claim by way of the actual innocence gateway. Because the habeas corpus petition is untimely and that untimeliness cannot be excused, the petition is denied.

Finally, a court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant makes such a "substantial showing" by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that, because of the adequacy of the issues presented, the petitioner deserves encouragement to appeal. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotations omitted). As stated, the Court concludes that Petitioner cannot make such a substantial showing and thus declines to issue a certificate of appealability.

## CONCLUSION

Respondent's motion to dismiss Petitioner's second amended habeas petition as untimely [22] is granted. All pending motions and deadlines are terminated as moot. Civil case terminated.

**DATED**: August 23, 2024    **ENTERED**:

*LaShonda A. Hunt*
LASHONDA A. HUNT
United States District Judge

15